IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO: 5:25-cv-359

| | | |
|---|---|---|
| CARLO COOK | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | COMPLAINT |
| | ) | |
| SYSCO RALEIGH, LLC | ) | |
| Defendant. | ) | |

## INTRODUCTION

This is an action for legal and equitable relief arising from unlawful employment practices committed by Defendant, Sysco Raleigh, LLC, in violation of federal and state law. Plaintiff, Carlo Cook, is a former employee of Defendant that was subjected to ongoing discrimination, harassment, and retaliation during his employment in violation of the Civil Rights Act of 1964 ("Title VII"), the Equal Pay Act ("EPA"), the Fair Labor Standards Act ("FLSA"), and the Surface Transportation Assistance Act ("STAA"), as well as the public policy of the State of North Carolina.

Defendant engaged in religious discrimination by denying Plaintiff reasonable accommodations for his sincerely held religious beliefs and retaliated against him for requesting those accommodations and for reporting unsafe and unlawful practices in the workplace. Defendant also engaged in retaliatory conduct after Plaintiff raised concerns about vehicle safety violations and the improper assignment

of federally regulated inspections to uncertified apprentice technicians, in violation of the STAA and public policy. Plaintiff was paid less than similarly situated employees of the opposite sex for performing substantially equal work and was denied lawful wages and overtime, in violation of the Equal Pay Act and FLSA.

The conditions created by Defendant's unlawful conduct were so severe and pervasive that Plaintiff was constructively discharged, causing lasting harm to his livelihood, career, and well-being. Plaintiff brings this action to assert his statutory rights, to recover compensatory, liquidated, and punitive damages, and to obtain injunctive and declaratory relief preventing further unlawful conduct by Defendant.

## PARTIES

1. Plaintiff, Carlo Cook, is a former employee of Sysco Raleigh, LLC. He is a citizen and resident of Goldsboro, Wayne County, North Carolina.

2. Upon information and belief Defendant, Sysco Raleigh, LLC is a Delaware Corporation that is registered with the North Carolina Secretary of State to conduct business within the state.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this action arises under the laws of the United States, including the Civil Rights Act of 1964, the Equal Pay Act, the Fair Labor Standards Act, and the Surface Transportation Assistance Act.

4. This court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1343(a)(4), as this action seeks redress for the deprivation of Plaintiff's civil rights secured by federal law.

5. This court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), as the state law claims asserted herein are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because the events giving rise to the claims occurred within the Eastern District of North Carolina, the Defendant maintains business operations and employed Plaintiff within this district, and substantial acts and omissions giving rise to Plaintiff's claims occurred in this district, including but not limited to Plaintiff's employment, discrimination, retaliation, and constructive discharge.

7. Plaintiff has satisfied all administrative prerequisites to filing this action, including the timely filing of a charge with the U.S. Equal Employment Opportunity Commission ("EEOC") and receipt of a Notice of Right to Sue.

## FACTUAL ALLEGATIONS

8. In or about 2022, Plaintiff was hired by Defendant as a diesel technician. Plaintiff, an African American male, had significant prior experience and was

assigned to the second shift in the maintenance facility located in Selma, North Carolina.

9. In or about January 2023, Plaintiff joined a local church and soon thereafter was selected as a preacher in training. Plaintiff's faith requires strict adherence to modesty in appearance and prohibits confrontation, physical violence, or retaliatory behavior.

10. Despite the issuance of uniforms to other employees, Plaintiff was not provided appropriate work uniforms due to him having a larger, taller and fuller stature. The ill-fitting uniforms exposed Plaintiff's body during routine movements, including bending and reaching, causing personal embarrassment and violating his religious beliefs regarding modesty.

11. On or about May 2, 2023, Plaintiff informed his immediate supervisor, Wendell Jones ("W. Jones"), that the provided uniforms exposed his flesh during work tasks. Plaintiff also reported that coworkers had mocked his appearance and that female employees, including Gabriela Villa ("Villa"), "Ms. Vickie", and janitorial staff, had witnessed these incidents of inadvertent exposure. Plaintiff expressed that this violated his religious principles.

12. On or about May 8, 2023, coworker Kyle Crenshaw ("Crenshaw") commented on Plaintiff's exposed body and stated he was tired of seeing Plaintiff's buttocks.

13. Eventually, Crenshaw assisted Plaintiff with filling out a Uniform Request Form and submitting it to W. Jones. Despite this, no corrective action was taken.

14. On or about May 30, 2023, W. Jones texted Plaintiff asking for his shirt size. Nonetheless, an appropriately sized uniform was not ordered. Plaintiff made multiple follow-up inquiries, but received vague or no responses, forcing him to wear personal clothing to work, which he could not regularly afford.

15. On or about May 7 and 16, 2023, Plaintiff was involved in responding to two separate safety incidents involving tractor #131131. In the first incident, the vehicle nearly experienced a "wheel-off" event due to improper wheel installation by apprentice technician Russell Cherry ("Cherry"), who lacked the certification to perform such work. In the second incident, coworker Benjamin Perry ("Perry") was dispatched to re-torque the lug nuts after Plaintiff identified the issue.

16. On or about June 11, 2023, Plaintiff delivered his Initial Sermon at church. This event marked a significant milestone in Plaintiff's ministerial training and reinforced his need for schedule accommodations to attend Sunday services and religious duties.

17. On or about June 15, 2023, during a shop meeting, W. Jones announced that technicians would transition to a five-day workweek.

18. During the meeting, Plaintiff raised concerns about unsafe practices, unequal assignment of PM/FAI/DOT inspections, and unrealistic expectations under current working conditions.

19. After the meeting, Plaintiff was mocked by coworkers Daniel Hernandez ("Hernandez") and Crenshaw for using the phrase "make production." W. Jones also joined in the ridicule.

20. On or about June 19, 2023, W. Jones informed Plaintiff he would be moved to a Sunday schedule starting in August. Plaintiff reminded W. Jones of his religious duties and that other technicians, including Adam Mumford ("Mumford"), had been granted schedule accommodations. W. Jones stated he could not change the directive from Defendant's Vice President, "Nick" but suggested Plaintiff arrive late after church.

21. On or about July 12, 2023, Plaintiff observed serious safety violations, including horseplay with heavy machinery and the use of homemade flamethrowers. Plaintiff reported these violations anonymously to Defendant's Director "Matt" providing a timeframe for video review. Instead of a formal investigation, W. Jones informally questioned all employees, except Plaintiff, thereby exposing Plaintiff's identity as the whistleblower.

22. On or about July 13, 2023, Plaintiff informed Matt that he had enrolled in an EPA 608 certification course, a requirement for promotion to Diesel Tech III.

Matt approved Plaintiff's participation and instructed W. Jones to coordinate the training schedule and process a pay raise upon successful certification.

23. On or about July 17, 2023, W. Jones gave Plaintiff a training timesheet and asked for weekly copies. However, W. Jones also criticized Plaintiff for going over his head to speak with Matt and directed Plaintiff to communicate only with him regarding future training matters.

24. On or about July 18, 2023, W. Jones acknowledged that Cherry had used a flamethrower and issued a write-up. Following this, Hernandez, a close friend of Cherry, threatened Plaintiff with physical harm, stating, "Watch your back."

25. On or about August 1, 2023, W. Jones directed Hernandez and Crenshaw to sabotage a tractor to test inspection thoroughness. Instead of assigning the unit to an outside vendor as intended, they assigned it to Plaintiff without disclosing the sabotage. Plaintiff discovered the issue during inspection and reported it, but no disciplinary action followed.

26. On or about August 4, 2023, Plaintiff notified W. Jones and Matt that he had obtained his EPA 608 certification. Despite the milestone, W. Jones failed to process the promised raise.

27. On or about August 14, 2023, Hernandez mocked Plaintiff's faith, accused him of "stealing time" due to the care and time he dedicated to completing his work tasks, and stated that "Jesus is going to get" Plaintiff. He threatened to publicly

shame Plaintiff at the August 17 shop meeting. That same day, W. Jones posted a mandatory schedule change requiring Sunday work for all technicians, though only Plaintiff was forced to comply.

28. On or about August 17, 2023, fearing continued harassment and confrontation, Plaintiff called in sick. Hernandez later mocked his absence and refused to assist with computer tasks.

29. On or about August 18, 2023, Perry confronted Plaintiff about his wage, disclosing Plaintiff's confidential salary information. Perry accused Plaintiff of being overpaid and began harassing him, demanding favors in exchange for past assistance.

30. Between August 20 and August 29, 2023, Plaintiff used personal time off ("PTO") to attend class due to W. Jones' refusal to accommodate his schedule. Plaintiff worked excessive hours, including six-day weeks and nine consecutive days, to avoid losing pay.

31. On or about September 8, 2023, while covering a shift for Perry, Plaintiff continued to face harassment by Hernandez. Plaintiff's request for PTO for a religious event on September 16 was also denied.

32. On or about September 12, 2023, tractor #131130 lost its wheels while on the road. Plaintiff received the call and later confirmed that the technician involved

was not certified. A damaged wheel from the incident was later found placed in the "good tire" pile, nearly leading to reuse.

33. On or about September 26, 2023, W. Jones again informed Plaintiff that he would be assigned Sunday shifts permanently.

34. On or about September 28, 2023 Plaintiff met with Nick and HR concerning the mandate to work on Sundays and to report ongoing safety issues, harassment and retaliation. Nick stated Plaintiff could keep his current schedule but did not enforce this with W. Jones.

35. On or about September 29, 2023, W. Jones denied Plaintiff a new uniform jacket while distributing them to others and instructed Plaintiff to falsely complete a federal inspection form ("pencil whip"). Plaintiff refused, citing legal and ethical violations.

36. On or about October 3, 2023, Plaintiff met with HR representative Brad Jones ("B. Jones") to report ongoing retaliation, sabotage, and safety risks. B. Jones dismissed the complaints, denied Plaintiff's leave request for job-related stress, and disparaged his performance without citing any record of poor work.

37. On or about October 4, 2023, Plaintiff submitted his resignation by text and retrieved his belongings. B. Jones asked Plaintiff to sign a prewritten resignation letter and failed to intervene when Perry made final harassing remarks.

38. Plaintiff resigned due to the cumulative impact of harassment, retaliation, religious discrimination, and unsafe working conditions.

39. Defendant's conduct constitutes a pattern of retaliation, denial of religious accommodation, creation of a hostile work environment, and violations of federal safety and wage disclosure laws.

## CLAIMS FOR RELIEF

### CLAIM ONE: RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
**(42 U.S.C. § 2000e-3(a))**

40. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

41. Plaintiff engaged in protected activity under Title VII, including but not limited to reporting workplace safety violations, complaining about religious discrimination, and opposing unlawful employment practices.

42. Defendant, through its managers and agents, retaliated against Plaintiff by subjecting him to adverse employment actions, including denial of uniforms and tools, reassignment to unsafe or undesirable tasks, intensified scrutiny, and eventual constructive discharge.

43. These retaliatory actions were causally connected to Plaintiff's protected activities.

44. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer economic damages, emotional distress, reputational harm, and other non-economic losses.

### CLAIM TWO: RELIGIOUS DISCRIMINATION AND FAILURE TO ACCOMMODATE IN VIOLATION OF TITLE VII
### (42 U.S.C. § 2000e-2(a)(1), § 2000e(j))

45. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

46. Plaintiff is a practicing Christian, and his sincerely held religious beliefs require him to attend services and religious activities on specified days, namely Sunday.

47. Defendant was aware of Plaintiff's religious beliefs and requests for accommodation but failed to reasonably accommodate Plaintiff's need to attend religious services and activities.

48. Instead of providing a reasonable accommodation, Defendant subjected Plaintiff to discrimination and retaliated against him for asserting his rights under Title VII.

49. Defendant's failure to accommodate and resulting adverse actions against Plaintiff constitute unlawful religious discrimination in violation of Title VII.

50. As a result, Plaintiff has suffered damages including emotional distress, loss of earnings, and reputational harm.

### CLAIM THREE: RETALIATION AND DISCRIMINATION UNDER THE NORTH CAROLINA EQUAL EMPLOYMENT PRACTICES ACT (NCEEPA)

(N.C. Gen. Stat. § 143-422.2)

51. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

52. Defendant engaged in discriminatory and retaliatory employment practices based on Plaintiff's religion and protected conduct.

53. These actions are in direct violation of North Carolina's public policy, as codified in NCEEPA.

54. Defendant's conduct was willful, malicious, and in reckless disregard of Plaintiff's rights.

55. Plaintiff seeks compensatory damages, including lost wages, emotional distress, and punitive damages as allowed under North Carolina law.

### CLAIM FOUR: CONSTRUCTIVE DISCHARGE IN VIOLATION OF TITLE VII AND PUBLIC POLICY

56. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

57. Defendant subjected Plaintiff to a hostile and intolerable work environment, including harassment, religious discrimination, and unsafe working conditions.

58. These conditions were so intolerable that any reasonable person in Plaintiff's position would feel compelled to resign.

59. Plaintiff's resignation thus constitutes a constructive discharge caused by Defendant's unlawful actions in violation of both Title VII and North Carolina public policy.

60. Plaintiff has suffered financial and emotional harm as a direct result.

## CLAIM FIVE: VIOLATION OF THE EQUAL PAY ACT
**(29 U.S.C. § 206(d))**

61. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

62. Plaintiff performed work requiring equal skill, effort, and responsibility under similar working conditions as similarly situated employees.

63. Defendant paid Plaintiff less than employees of the opposite sex for performing substantially equal work, without justification under the statutory exceptions.

64. Defendant's violation of the Equal Pay Act was willful and undertaken with reckless disregard for Plaintiff's rights.

65. Plaintiff is entitled to unpaid wages, liquidated damages, and attorney's fees under the Equal Pay Act.

## CLAIM SIX: VIOLATION OF THE FAIR LABOR STANDARDS ACT ("FLSA")
**(29 U.S.C. § 201 et seq.)**

66. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

67. Plaintiff and others similarly situated were not properly compensated for all hours worked, including overtime hours, and Defendant failed to maintain accurate records of time worked.

68. Defendant's actions violate the FLSA's minimum wage and overtime provisions.

69. Defendant's violations were willful and not based on good faith.

70. Plaintiff is entitled to back pay, liquidated damages, interest, and attorneys' fees under the FLSA.

### CLAIM SEVEN: VIOLATION OF THE SURFACE TRANSPORTATION ASSISTANCE ACT ("STAA")
### (49 U.S.C. § 31105)

71. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

72. Plaintiff made internal complaints regarding violations of commercial vehicle safety regulations, including the assignment of federally regulated inspections to uncertified apprentices.

73. Plaintiff's complaints constitute protected activity under the STAA.

74. Defendant retaliated against Plaintiff for engaging in protected activity by altering his work duties, subjecting him to harassment, and ultimately forcing his resignation.

75. Plaintiff is entitled to relief under the STAA, including reinstatement, back pay, compensatory damages, and attorneys' fees.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all claims so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure and any applicable provisions of federal or state law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant and award the following relief:

1. A declaration that Defendant's conduct, policies, and practices as alleged herein violated Plaintiff's rights under Title VII of the Civil Rights Act of 1964, the Equal Pay Act, the Fair Labor Standards Act, the Surface Transportation Assistance Act, and North Carolina public policy;

2. An order requiring Defendant to:

    a. Cease and desist from any further retaliation or discrimination against Plaintiff;

    b. Implement appropriate policies and training to prevent future violations; and

    c. Reinstate Plaintiff to his prior position or a substantially equivalent position or in the alternative, provide front pay.

3. Compensatory damages for all economic losses including lost wages, lost employment benefits, future lost earnings, and out-of-pocket expenses, in an amount to be determined at trial.

4. Noneconomical damages for the intentional and/or negligent infliction of emotional distress, pain and suffering, mental anguish, humiliation, loss of professional reputation, and related damages;

5. Liquidated and Statutory Damage as allowed by law under the Equal Pay Act, the FLSA, and the STAA, including liquidated damages for willful violations.

6. Punitive Damages for Defendant's willful, malicious, and reckless disregard for Plaintiff's federally protected rights, as permitted under Title VII and North Carolina law.

7. Award Plaintiff reasonable attorneys' fees, expert witness fees, litigation expenses, and court costs as authorized by Title VII, the Equal Pay Act, the FLSA, and other applicable statutes;

8. Pre- and Post-Judgment Interest as allowed by law; and

9. Any such further relief as the Court deems just, equitable, and proper.

[THE REMAINDER OF THIS PAGE IS LEFT INTENTIONALLY BLANK]

Respectfully submitted, this the 24th day of June, 2025.

/s/ Neubia L. Harris
Neubia L. Harris
N.C. Bar No.: 42069
The Law Office of Neubia L. Harris, PLLC
312 W. Millbrook Road, Ste. 141
Raleigh, NC 27609
(919) 526-0500 (telephone)
(919) 589-3935 (facsimile)
neubia@neubiaharrislaw.com
*Attorneys for Plaintiff*